**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **GILBERT FAHNBULLEH,** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action No. 15-5075 (ES) (JAD)** |
| | : | |
| **v.** | : | **MEMORANDUM OPINION** |
| | : | |
| **JOSEPH W. STENECK, individually** | : | |
| **and as an employee of the** | : | |
| **Hudson County Sheriff's Department,** | : | |
| **Badge Number 0143; HUDSON** | : | |
| **COUNTY; HUDSON COUNTY** | : | |
| **CORRECTIONAL DEPARTMENT;** | : | |
| **LOGAN TOWING INC.,** | : | |
| | : | |
| **Defendants.** | : | |

**SALAS, DISTRICT JUDGE**

Defendants Joseph W. Steneck and Hudson County (collectively, the "Moving Defendants") move for summary judgment, seeking dismissal of *pro se* Plaintiff Gilbert Fahnbulleh's complaint. Having considered the submissions in support of and in opposition to the Moving Defendants' summary judgment motion, the Court resolves the motion without oral argument under Federal Rule of Civil Procedure 78(b).

As set forth below, the Moving Defendants' motion is GRANTED in part and DENIED in part.

# I.      Relevant Background[1]

## A. Plaintiff gets arrested

Both parties have submitted the "Incident Report Form." (D.E. No. 1-2, Ex. 6; D.E. No. 43-2, Ex. A). Although certain things described in this report are disputed, the Court uses it to provide a brief background.

In early December 2014, Officer Steneck pulled over Plaintiff. This happened at about 9:45 p.m. Steneck had activated his lights and sirens because Plaintiff's car had tinted windows. Plaintiff didn't immediately pull over.

After stopping, Plaintiff rolled down his window 2 inches and wanted to know why he was being pulled over. Plaintiff didn't comply with certain of Steneck's requests. Plaintiff videotaped some of the encounter on his cell phone.

Ultimately, Steneck placed Plaintiff under arrest. After being placed in handcuffs, Plaintiff was read his Miranda Rights and, after a pat down search, he was placed in Steneck's police car. Before and after being handcuffed, Plaintiff kept stating "I do not consent to any searches." Several police officers were at the scene.

Thereafter, "Logan Towing" came to impound Plaintiff's car. Steneck took Plaintiff for "processing." While being processed, Plaintiff felt ill and he was taken to a hospital. Ultimately, he was "medically cleared for incarceration," "finger printed," and "photographed" before "being lodged at the Hudson County Jail." He was charged with eluding and obstructing a governmental function on warrant—and received a summons for careless driving, tinted windows, and not wearing a seat belt.

---

[1]      The Court writes primarily for the parties and assumes their familiarity with the relevant procedural history, as well as the arguments made in support of and in opposition to the pending motion. Where facts are undisputed, the Courts notes as much.

## B. Plaintiff's Claims

Here, Plaintiff sued the following Defendants: Joseph W. Steneck (in his official and individual capacity), Hudson County, Hudson County Correctional Department, and Logan Towing Inc. (D.E. No. 1). He alleges violations of his rights under the "First, Fourth, Fifth, Eight, Ninth, and Fourteenth Amendments." (*Id.* ¶ 1).

The Court has an "obligation to liberally construe a *pro se* litigant's pleadings."[2] Bearing this in mind (and mindful of the issues raised by the Moving Defendants' motion that Plaintiff opposed) the Court deciphers—for the purposes of resolving this motion—the following claims against all Defendants: (1) false arrest in violation of his federal constitutional rights (*see id.* ¶ 4); (2) false imprisonment in violation of his federal constitutional rights (*see id.*); (3) unlawful search and seizure of his person and property in violation of his federal constitutional rights (*see id.* ¶¶ 5-6, 13); (4) abuse of process and malicious prosecution in violation of his federal constitutional rights (*see id.* ¶¶ 16-17); (5) excessive-force claims in violation of his federal constitutional rights (*see id.* ¶¶ 8-11); (6) violation of his First Amendment rights (*see id.* ¶¶ 4, 13); (7) violation of his Ninth Amendment rights (*see id.* ¶ 1); and (8) wanton infliction of emotional distress (*see id.* ¶¶ 14-15). This last claim is the only state law claim apparent from Plaintiff's complaint. (*See generally id.*).

He seeks injunctive relief, as well as at least $2,800,000 in damages. (*See id.* at 4 ("General damages in the amount of two million and eight hundred thousand dollars ($2,800,000) and Punitive damages in the amount of eight hundred thousand dollars ($800,000) payable in US dollars . . . .")).

---

[2]  *Higgs v. Attorney Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

The Moving Defendants seek summary judgment in their favor and dismissal of this action. (D.E. No. 43). Plaintiff submitted an opposition, which doesn't have a formal response to the Moving Defendants' statement of undisputed facts. (D.E. No. 45). The Moving Defendants' reply cites (among other things) Plaintiff's failure to adhere to the procedural requirements of Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1. (D.E. No. 46).

## II.     Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" issue of material fact exists for trial "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the non-moving party bears the burden of proof at trial, the moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the movant meets this burden, the non-movant must then set forth specific facts that show the existence of a genuine issue for trial. *Id.* at 324; *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010).

"To survive summary judgment, a party must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex*, 477 U.S. at 325); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that, when

the moving party has carried its burden under Rule 56, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). And the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

"Proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Dinnerstein v. Burlington Cty. Coll.*, No. 13-5598, 2017 WL 5593776, at *4 (D.N.J. Nov. 21, 2017) (internal quotation marks and citations omitted); *see also Schock v. Baker*, 663 F. App'x 248, 252 (3d Cir. 2016) ("Although the Schocks' pleadings are read with some leeway in light of their pro se status, they were still required to comply with Rule 56."); *Mertz v. Harmon*, No. 15-6627, 2017 WL 930303, at *5 (E.D. Pa. Mar. 9, 2017) ("Although Plaintiff is proceeding pro se, that does not eliminate his obligation to comply with Rule 56.") (citation omitted).

Finally, "a district court must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor." *Podobnik*, 409 F.3d at 589 (citations omitted).

## III.    Discussion

As a preliminary matter, 42 U.S.C. § 1983 "is not itself a source of substantive rights, but rather a method for vindicating federal rights elsewhere conferred." *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (internal quotation marks, alteration and citation omitted). "To establish liability under 42 U.S.C. § 1983, a plaintiff must show that the defendants, acting under color of

law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Id.* (citation omitted); *see also Williams v. Vanderud*, No. 16-1245, 2017 WL 4274265, at *4 (D.N.J. Sept. 26, 2017) ("To state a claim under § 1983, a plaintiff must establish that (1) the conduct deprived him of his rights, privileges, or immunities secured by the Constitution or laws of the United States and (2) the conduct challenged was committed by a person acting under color of state law.") (citations omitted).

Also as a preliminary matter, the Undersigned has bent over backwards—in light of Plaintiff's pro se status—to confirm whether anything from the record or the parties' submissions raises a genuine issue of material fact. This, however, should not be construed as authority to suspend the Federal Rules of Civil Procedure—or the District's Local Civil Rules— regarding summary judgment for pro se plaintiffs. Rather, the Court endeavors to uncover *given the circumstances in this case* whether there is admissible evidence that creates more than a metaphysical doubt as to the essential elements of Plaintiff's claims. *Cf. Pratt v. Port Auth. of N.Y. & N.J.*, 563 F. App'x 132, 134 (3d Cir. 2014) ("In this Court, Pratt has filed an informal brief, which consists mostly of irrelevant complaints about his attorney's performance in the District Court. Defendants argue that Pratt has consequently waived all challenges to the District Court's order. However, because Pratt is proceeding pro se, we will construe his brief liberally."); *Sumner v. Schreck*, No. 13-1840, 2015 WL 5646528, at *3 n.2 (D.N.J. Sept. 24, 2015) ("Plaintiff's opposition papers do not include a separate statement of material facts. The Court is inclined to interpret this rule liberally, however, as Plaintiff, who is appearing pro se, has filed some opposition that includes specific references to certain 'facts' with which he disagrees.") (internal citation omitted).

**A. The Court dismisses Plaintiff's individual-capacity claims for false arrest, false imprisonment, and malicious prosecution against Steneck**

    **1.    The Law**

The Fourth Amendment provides that people are "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. "Claims of both false arrest and false imprisonment are predicated on an arrest made without probable cause in violation of the Fourth Amendment." *Quinn v. Cintron*, No. 11-2471, 2013 WL 5508667, at *3 (E.D. Pa. Oct. 3, 2013), *aff'd*, 629 F. App'x 397 (3d Cir. 2015). Likewise, a constitutional claim for malicious prosecution stems from the Fourth Amendment. *Fitzgerald v. Martin*, No. 16-3377, 2017 WL 3310676, at *7 (E.D. Pa. Aug. 3, 2017) (citation omitted).

False arrest, malicious prosecution, and false imprisonment all require a plaintiff to show the underlying arrest was not supported by probable cause in order to survive summary judgment. *Anderson v. Perez*, 677 F. App'x 49, 51-52 (3d Cir. 2017) (affirming grant of summary judgment after finding the plaintiff's "claims that require an absence of probable cause—false arrest, malicious prosecution, and false imprisonment—fail"); *see also Lawson v. City of Coatesville*, 42 F. Supp. 3d 664, 673 (E.D. Pa. 2014) (stating that the "threshold question" for the plaintiff's Fourth Amendment claims for false arrest, unlawful search, false imprisonment, and malicious prosecution is whether there was probable cause to arrest him).

"An arrest was made with probable cause if at the moment the arrest was made the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005) (cleaned up). "The test for an arrest without probable cause is an objective one, based on the

facts available to the officers at the moment of arrest." *Quinn*, 629 F. App'x at 399 (internal quotation marks and citations omitted). Although generally "the question of probable cause in a section 1983 damage suit is one for the jury," a district court may conclude "that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788-89 (3d Cir. 2000) (internal quotation marks and citations omitted).

In particular, the Third Circuit has stated that:

> While it is axiomatic that at the summary judgment stage, we view the facts in the light most favorable to the nonmoving party, it does not follow that we exclude from the probable cause analysis unfavorable facts an officer otherwise would have been able to consider. Instead, we view *all* such facts and assess whether any reasonable jury could conclude that those facts, considered in their totality in the light most favorable to the nonmoving party, did not demonstrate a "fair probability" that a crime occurred. Only then would the existence of conflicting evidence rise to the level of a "genuine dispute as to any material fact" such that summary judgment would be inappropriate. Thus, where the question is one of probable cause, the summary judgment standard must tolerate conflicting evidence to the extent it is permitted by the probable cause standard.

*Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016) (emphasis in original).

## 2. Analysis

The undisputed facts show Steneck had probable cause to arrest Plaintiff. To reiterate, "[i]n determining whether probable cause existed at the time of the arrest, courts must objectively assess whether, at the time of the arrest and based upon the facts known to the officer, probable cause existed 'as to any offense that could be charged under the circumstances.'" *Caronte v. Chiumento*, No. 15-1828, 2018 WL 1135331, at *3 (D.N.J. Mar. 2, 2018) (quoting *Wright*, 409 F.3d at 602).

"Under New Jersey law, '[a] person commits an offense if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act.'"  *Id.* (quoting N.J.S.A. § 2C:29-1) (alteration in original).  "[T]o support an obstruction of justice charge, [a] defendant must have affirmatively done something to physically interfere or place an obstacle to prevent the police from performing an official function."  *Id.* (internal quotation marks and citations omitted).  "The physical act may include 'failure to follow instructions of an officer,' or 'fail[ing] to engage in some physical conduct that causes interference;' 'physical contact' is not required."  *Id.* (alteration in original) (citation omitted).

As noted, Plaintiff was driving in a car with tinted windows.  (D.E. No. 43-2, Ex. B ("Pl. Admissions") ¶ 1).  Steneck turned on his lights and sirens between 9:30 and 10:00 p.m. (D.E. No. 43-4, Ex. A ("Pl. Dep.") at 107:10-108:5, 115:23-116:18).  After Steneck pulled him over, Plaintiff opened his window two inches.  (Pl. Dep. at 184:4-13, 211:12-15).

Then, Plaintiff's very own cell phone footage indisputably shows that Plaintiff did not follow Steneck's commands—who was in uniform—to exit his vehicle.  (*See* D.E. No. 1, Exs. A & B (electronic disc submitted to Court); *see also* D.E. No. 45 ("Pl. Opp. Br.") at 2 ("Defendant was in a uniform and a marked Vehicle . . . .")).  There are at least 2, if not 3, commands by Steneck for Plaintiff to exit his vehicle; Plaintiff does not do so.  In fact, Plaintiff's deposition testimony corroborates as much.  For example, Plaintiff testified:

3    Q.    Did you -- when he originally told you
4    to open the door, did you?
5        A.    I was -- when he said that, I made an
6    attempt to open the door. I believe it was, "Roll
7    your window down," or, "Open the door," one of the
8    two. But again, when he said, "Open the door. Roll
9    the window down," I stated, "Sir," I guess I asked
10   him, "Sir, could you -- is there a problem," or,
11   "Can you identify yourself," something to that
12   effect. I said, I believe I said, "Sir, can you
13   identify yourself?" When he said, "Roll down the
14   window. Open up the door," I said, "Sir, can you
15   identify yourself?" I kept hearing, "Open the
16   window. Roll down the window. If you don't open
17   the window, I'm going to break the window. Roll the
18   window down. Give me the keys." I keep hearing
19   orders so to speak, "Give me the keys. Roll the
20   windows down. Open the car," you know, things like
21   that. And I just kept saying, "Sir, identify
22   yourself. Do you have a warrant?" Things like
23   that. "No. I don't need a warrant." So it kept
24   going back and forth. So all I kept getting was
25   orders, "Roll the window down," "Open the car," or,

```
 1    "Open the door."
 2          Q.    So out of all those initial
 3    requests, --
 4          A.    Right.
 5          Q.    -- did you comply with any of them?
 6          A.    Yes.
 7          Q.    Which one?
 8          A.    I rolled down the windows.
 9          Q.    How far did you roll the windows down?
10          A.    All the way down.  And again, if you've
11    got the video, you will see it.
12          Q.    Well, initially wasn't it your
13    statement that you rolled the window down two
14    inches?
15          A.    It was rolled down two inches.
16          Q.    So was it rolled down two inches before
17    Officer Steneck -- Lieutenant Steneck stepped out of
18    the vehicle?
19          A.    Before he approached?  No.  No.
20    Because it was raining.
21          Q.    So when did you open the window?
22          A.    When he came towards the car and he
23    says, "Roll the window down," and I rolled it down
24    about two inches.  And then after he said, "Roll the
25    window all the way down."  And you know, at the time
```

(Pl. Dep. at 210:3-211:25).

Recently, a court in this district granted summary judgment on § 1983 claims for false arrest and false imprisonment against an officer because: "The undisputed facts state that [the plaintiff] refused [the officer's] 'commands to exit [the] vehicle' 'at least two or three [times]' during the course of [the officer's] attempts to investigate a reported road rage incident." *Caronte*, 2018 WL 1135331, at *3 (internal citation omitted).  There, the plaintiff testified at deposition that the officer "says where do you work at? I go, it's none of your concern. He says

11

get out of the car. I go, for what? Then I say okay, I'll tell you where I work at. Then he says get

out of the car, raised his voice. After two or three times, I get out of the car." *Id.* at *4 n.7.

"Such failures to follow Defendant [officer's] instructions established probable cause for

obstruction of justice." *Caronte*, 2018 WL 1135331, at *3 (internal citation omitted).

So too here. By refusing commands to open his door and instead engaging in back-and-

forth about a warrant and the officer's identity, the Court finds that—having viewed all the facts

and considered them in their totality in the light most favorable to Plaintiff—probable cause

exists and no reasonable jury can find otherwise. *See id.* at *3-4. Indeed, the New Jersey

Supreme Court has stated that:

> We must be mindful that a suspect who is the subject of an arrest, a
> motor vehicle stop, or an investigatory stop is not privy to the
> information motivating the police action. Therefore, while on the
> street, the suspect is in no position to challenge the information
> possessed by the police. The suspect may in fact have committed
> no offense, but he cannot be the judge of his own cause and take
> matters into his own hands and resist or take flight.

*State v. Crawley*, 901 A.2d 924, 935 (N.J. 2006); *see also United States v. Bonner*, 363 F.3d 213,

216 (3d Cir. 2004) ("A police officer who observes a violation of state traffic laws may lawfully

stop the car committing the violation. It is also well settled that a police officer executing such a

stop may exercise reasonable superintendence over the car and its passengers. [T]he officer may

order the driver out of the vehicle without any particularized suspicion.") (internal citations

omitted).

To be sure, the "analysis looks not to the guilt or innocence of the accused, but focuses

solely on the existence of probable cause at the time of arrest." *Piazza v. Lakkis*, No. 11-2130,

2012 WL 2007112, at *6 (M.D. Pa. June 5, 2012) (citing *Groman v. Twp. of Manalapan*, 47 F.3d

628, 634 (3d Cir. 1995)). "Such probable cause 'need only exist as to any offense that could be

charged under the circumstances.'" *Id.* (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994)).

Thus, Plaintiff's Fourth Amendment claims for false arrest, false imprisonment, and malicious prosecution against Steneck in his individual capacity must be dismissed. *See Anderson*, 677 F. App'x at 52. To the extent Plaintiff seeks to assert these claims under the Due Process Clause of the Fourteenth Amendment, this is unavailing. *See, e.g.*, *Bergdoll v. City of York*, 515 F. App'x 165, 170 (3d Cir. 2013) (stating that the plaintiff's "Fourteenth Amendment substantive due process claim fails because her claims of excessive force, false arrest, and malicious prosecution are cognizable under the Fourth Amendment, and when government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate") (internal quotation marks and citation omitted); *Meketa v. Kamoie*, 955 F. Supp. 2d 345, 365 (M.D. Pa. 2013) ("[W]here the core of a plaintiff's claim arises from allegations of unlawful arrest, imprisonment, or prosecution, courts are directed to analyze those claims through the prism of the Fourth and not the Fourteenth Amendment.").

Further, given the above analysis, Steneck need not rely on qualified immunity to prevail on summary judgment. *See Quinn*, 2013 WL 5508667, at *6; *see also Coles v. Carlini*, 162 F. Supp. 3d 380, 400 (D.N.J. 2015). Nevertheless, because the Court finds that Plaintiff's "arrest was supported by probable cause," the Court finds that Steneck's "conduct does not violate a clearly established statutory or constitutional right" and, therefore, he is "entitled to qualified immunity." *See Quinn*, 2013 WL 5508667, at *6.[3]

---

[3] In light of this analysis, the Court declines to reach all other arguments concerning Plaintiff's claims for false arrest, false imprisonment, and malicious prosecution, as well as those concerning qualified immunity. Further, it seems Plaintiff invokes the Fifth Amendment for his unlawful imprisonment claim (*see* D.E. No. 45 at 3)—but this "Fifth Amendment claim fails because the Due Process Clause of the Fifth Amendment only applies to federal officials, and Officer [Steneck] is a state official." *See Bergdoll*, 515 F. App'x at 170.

**B. The Court dismisses Plaintiff's individual-capacity claims for unlawful search and seizure of his person against Steneck**

As the Moving Defendants aptly note (*see* D.E. No. 43-9 at 25-26), the contours of Plaintiff's unlawful search and seizure claim are not entirely clear. That being the case, the Court endeavors to address (in this section and section C, *infra*) all alleged seizures or searches based on Plaintiff's complaint and the record.

**1.     The Law**

"The Fourth Amendment protects the right to be free from 'unreasonable searches and seizures." *United States v. Johnson*, 432 F. App'x 118, 120 (3d Cir. 2011) (quoting U.S. Const. amend. IV). "A seizure occurs when a police officer uses physical force to restrain a suspect or when a suspect submits to an assertion of authority." *Id.* (citation omitted). "After a seizure, the well-established exception for searches incident to a lawful arrest allows the police to search an arrestee's person and the areas from which 'he might gain possession of a weapon or destructible evidence' without running afoul of the Fourth Amendment." *Id.* (quoting *Arizona v. Gant*, 556 U.S. 332, 339 (2009)).

**2.     Analysis**

*First*, "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning" of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996) (citations omitted). "Because an ordinary traffic stop is analogous to an investigative detention, it has been historically reviewed under the investigatory detention framework first articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)." *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006). "[T]he *Terry* reasonable suspicion standard applies to routine traffic stops." *Id.* at 397. "[A] traffic stop will be deemed a

reasonable 'seizure' when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." *Id.* at 398. Here, the indisputable evidence is that Plaintiff was driving in a car with tinted windows—which the Court has little trouble on this record to find constitutes an articulable and reasonable suspicion that Plaintiff committed a motor vehicle offense that supports stopping his car. (*See* Pl. Admissions ¶ 1); *e.g.*, *State v. Ortiz*, 2009 WL 5062351, at *4 (N.J. Super. Ct. App. Div. Dec. 28, 2009) (per curiam).

*Second*, to the extent Plaintiff argues that his Fourth Amendment rights were violated by a search of his person, this is unavailing. *See Brooks v. Codispoti*, No. 12-5884, 2015 WL 9462086, at 9 (D.N.J. Dec. 28, 2015) ("The Supreme Court has held, '[a]mong the exceptions to the warrant requirement is a search incident to a lawful arrest.' *Arizona v. Gant*, 556 U.S. 332, 338 (2009). Since this Court has established that Plaintiff was not falsely arrested as a matter of law, summary judgment on this claim will be granted.") (alteration in original).

Thus, Plaintiffs' individual-capacity claims for unlawful search and seizure of his person against Steneck are dismissed.

**C. The Court cannot dismiss Plaintiff's individual-capacity claim for unlawful search of his car at this time—but dismisses his individual-capacity claim for unlawful seizure of the car**

**1. The Law**

Again, the "Fourth Amendment protects the right to be free from 'unreasonable searches and seizures." *Johnson*, 432 F. App'x at 120 (quoting U.S. Const. amend. IV). "The Fourth Amendment 'indicates with some precision the places and things encompassed by its protections': persons, houses, papers, and effects." *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Oliver v. United States*, 466 U.S. 170, 176 (1984)). And "automobiles are 'effects' and

thus within the reach of the Fourth Amendment." *S. Dakota v. Opperman*, 428 U.S. 364, 367 (1976).

### 2. Analysis

The Court is in a predicament regarding the alleged search of Plaintiff's car. Plaintiff submitted an electronic disc with his Complaint that has a video showing that his car has been rummaged through. Another video in that disc is of the arrest incident and shows Plaintiff repeatedly saying to Steneck (if not other officers as well that were within earshot) that he doesn't consent to any search. The Moving Defendants' brief states that Plaintiff's car "was impounded and underwent a standard inventory search." (D.E. No. 43-9 at 5). Indeed, Steneck's certification affirms the same. (D.E. No. 43-1 ¶ 26). The Moving Defendants also submitted an exhibit of a vehicle impound report in which the vehicle contents and condition are referenced. (D.E. No. 43-2, Ex. K). And one of their statement of material facts states that Plaintiff's car "was impounded and underwent a standard inventory search." (D.E. No. 43-8 ¶ 24). As noted, Plaintiff has not formally responded to these statement of facts. Conversely, the Moving Defendants have not fleshed out how a search of Plaintiff's car—which they don't seem to dispute happened—was a permissible inventory search under the law. *See, e.g.*, *United States v. Matthews*, 532 F. App'x 211, 218-221 (3d Cir. 2013) (discussing the inventory-search exception). Accordingly, the Court denies without prejudice the Moving Defendants' motion insofar as it seeks dismissal of Plaintiff's claim for unlawful search of his car under the Fourth Amendment.

But seizure of Plaintiff's car is a different story. "The community caretaking function encompasses law enforcement's authority to remove vehicles that impede traffic or threaten public safety and convenience." *United States v. Miller*, 662 F. App'x 169, 172 (3d Cir. 2016)

(internal quotation marks and citations omitted). "[A] decision to impound a vehicle contrary to a standardized procedure or even in the absence of a standardized procedure should not be a per se violation of the Fourth Amendment." *United States v. Smith*, 522 F.3d 305, 312 (3d Cir. 2008). The Court must focus on the "reasonableness of the vehicle impoundment for a community caretaking purpose." *See id.* at 314.

It is undisputed that it was raining, conditions were wet, it was night, Plaintiff was alone, he was arrested, and his car was in a driveway. (*See, e.g.*, Pl. Dep. at 108:1-12, 116:10-12, 120:11-21, 162:7-9, 164:5-15, 165:21-166:2, 172:10-15, 211:19-20, 135:6-9). There is no evidence that a licensed driver could have picked up Plaintiff's car. As such, there are no further facts supporting a constitutional violation. *See Smith*, 522 F.3d at 313 ("In performing this community caretaking role, police are expected to aid those in distress, combat actual hazards, prevent potential hazards from materializing and provide an infinite variety of services to preserve and protect public safety.") (internal quotation marks and citation omitted).

Thus, the Moving Defendants' motion is denied without prejudice insofar as it seeks dismissal of Plaintiffs' individual-capacity claim for unlawful search of his car, but granted insofar as it seeks dismissal of his claim for seizure of his car.[4]

---

[4] To be sure, neither party addresses the import (or lack thereof) of the following allegations from Plaintiff's Complaint (provided under the heading "THIRD CLAIM: INTENTIONAL AND RECKLESS DISREGARD FOR RIGHTS"): "After [his] release, properties such as wallets, mobile phone, automobile, home keys and monies at the time of the arrest were not provided back to Plaintiff upon release. . . . Plaintiff's properties were held in the Correctional Facility for more than 48 hours on a warrantless arrest and seizure. During this period, Plaintiff did not get access to money for personal expenses because all [his] money and banking documents (Debit and Credit Cards) were in custody. The sum of money Plaintiff had in [his] possession when [he] was arrested was place [sic] into a prison commissary account without [his] consent." (*See* D.E. No. 1 ¶ 13 (alterations in original)).

**D. The Court dismisses all claims under the Eighth Amendment—but not Plaintiff's excessive-force claims under the Fourth or Fourteenth Amendments at this time**

**1.      The Law**

A § 1983 claim for excessive force by a law enforcement officer may be based on the Fourth Amendment's protection from unreasonable seizures of a person. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). In fact, if "the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989). The Supreme Court has explicitly held that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* at 395 (emphasis in original).

"It is clear, however, that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Id.* at 395 n.10. To that extent, a pretrial detainee is not subject to the Eighth Amendment's protections; rather, the Fourteenth Amendment's Due Process Clause governs. *See Navolio v. Lawrence Cty.*, 406 F. App'x 619, 622 (3d Cir. 2011); *see also Bergdoll*, 515 F. App'x at 170-71 ("We also reject Bergdoll's claim that Officer Baez's actions violated her rights under the Eighth Amendment. . . . [T]he Eighth Amendment only serves as a primary source of substantive protection after conviction, and the conduct complained of by Bergdoll occurred prior to and during her arrest.") (internal quotation marks and citations omitted).

"In other words, punishment before conviction and imposition of sentence offends due process." *McLaughlin v. Cunningham*, No. 13-1926, 2014 WL 1225935, at *7 (E.D. Pa. Mar. 25, 2014) (citation omitted). "More specifically, 'the Due Process Clause [of the Fourteenth Amendment] protects a pretrial detainee from the use of excessive force that amounts to punishment.'" *Id.* (quoting *Graham*, 490 U.S. at 395 n.10) (alteration in original). "Where a pretrial-detainee-plaintiff alleges that he was subjected to excessive force by an officer, the court must examine whether the force complained of was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at *8 (internal quotation marks and citation omitted).

### 2. Analysis

There appear to be three factual predicates at issue. The *first* involves handcuffs. (*See, e.g.*, D.E. No. 1 ¶ 9 ("Plaintiff suffers a scar on [his] left wrist that could be permanent due to excessively tight and prolonged handcuffing.") (alteration in original)). At deposition, Plaintiff testified about the tightness of the handcuffs, the duration of their use, and having been put in leg irons—and repeated requests for loosening of the handcuffs. (*See* Pl. Dep. at 121:19-123:18). The *second* involves conditions while in custody: "Plaintiff was also deprived of basic human needs such as adequate feeding, warmth and exercise." (*See, e.g.*, D.E. No. 1 ¶ 11). He "was poorly fed" and "was told when to eat, sleep, and wake up at unusual hours." (*Id.*). And the *third* involves administration of a tuberculosis test—which was allegedly administered "under duress." (*Id.*).

As aptly stated recently by a sister court in the Third Circuit, both the Supreme Court and the Third Circuit seemingly have declined to address when the Fourth Amendment ceases to govern because pretrial detention begins—which then implicates the Due Process Clause. *See*

*McLaughlin*, 2014 WL 1225935, at *6. Here, the Moving Defendants do not provide a sufficiently clear discussion and analysis (nor does Plaintiff for that matter) as to whether the Fourth or Fourteenth Amendment governs Plaintiff's claims—and, if so, why—for each of the aforementioned factual predicates. (*See* D.E. No. 43-9 at 29-37).

Although the Court has no qualms about dismissing Plaintiff's Eighth Amendment claims, it would be premature—without sufficient argumentation from at least the Moving Defendants—to adjudicate the above mentioned claims. The Court places a premium on the fair and thorough review of the parties' submissions and contentions. So the Court will deny without prejudice the Moving Defendants' motion to the extent it seeks dismissal of excessive-force claims brought under the Fourth and Fourteenth Amendments. *Cf. Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 567 (3d Cir. 1985) ("A court's inherent power to manage its caseload, control its docket, and regulate the conduct of attorneys before it, provides authority to fashion tools that aid the court in getting on with the business of deciding cases.").

### E. The Court dismisses Plaintiff's individual-capacity claims under the First Amendment against Steneck

#### 1.     The Law

"The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Jones v. N. Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977). "[M]aintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). "[E]ven when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison

administration, safeguarding institutional security." *Id.* at 547 (citations omitted). "The fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights." *Id.* at 546. "This principle applies equally to pretrial detainees and convicted prisoners." *Id.* "A detainee simply does not possess the full range of freedoms of an unincarcerated individual." *Id.*

### 2. Analysis

Here, Plaintiff alleges that he "was held in lockdown for three days without the ability to freely express [himself] or communicate with [his] family, especially [his] grandmother who is 82 years old." (D.E. No. 1 ¶ 13 (alterations in original)). Plaintiff also alleges that: "Officer Steneck ordered Plaintiff to remove [himself] from [his] automobile and Plaintiff followed [his] order . . . . Officer Steneck made threats to break into Plaintiff's property and physically removed [him] from [his] property with a firearm on Officer Steneck . . . . At this point Plaintiff's Freedom of Speech, Liberty and the Pursuit of Happiness were in Jeopardy due to the threats made by Officer Steneck." (*Id.* ¶ 4 (alterations in original)).

Plaintiff doesn't reference the First Amendment in his opposition brief. (*See* D.E. No. 45).[5] Without more, the record is devoid of materials from which a fact-finder could find that Steneck violated Plaintiff's First Amendment rights. Moreover, no authority supports what seems to be Plaintiff's contention: his First Amendment protections were violated because he was arrested.

### F. The Court dismisses Plaintiff's individual-capacity claims under the Ninth Amendment against Steneck

"[T]he Ninth Amendment does not independently provide a source of individual constitutional rights." *Perry v. Lackawanna Cty. Children & Youth Servs.*, 345 F. App'x 723,

---

[5]      On the other hand, Plaintiff references the Sixth Amendment for some reason in his opposition brief. As such, it appears no claim under the Sixth Amendment was advanced in his Complaint. (*See* D.E. No. 1).

726 (3d Cir. 2009) (citations omitted). "The Ninth Amendment is a rule of construction, clarifying that an enumerated Bill of Rights does not imply federal authority in unenumerated areas, and by itself does not confer substantive rights for purposes of § 1983." *Soder v. Chenot*, No. 06-1522, 2007 WL 4556670, at *4 (M.D. Pa. Dec. 20, 2007). The Court agrees with the Moving Defendants that any claim relating to the Ninth Amendment must be dismissed as it doesn't protect against any conduct described in the record.

### G. The Court dismisses all official-capacity claims against Steneck, as well as all claims against Hudson County

#### 1. The Law

"[A] lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them." *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006); *see also Baez v. Lancaster Cty.*, 487 F. App'x 30, 32 (3d Cir. 2012) ("The claim against Warden Guarini in his official capacity is duplicative of the suit against the County.").

"Although municipalities such as [a county] qualify as 'persons' under § 1983, they cannot be held liable for their employees' actions on a theory of *respondeat superior*." *Bergdoll*, 515 F. App'x at 171 (citation omitted). "Rather, a plaintiff seeking relief from a municipality under § 1983 must identify a particular 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,' and show that the policy in question directly led to the complained-of injury." *Id.* (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

#### 2. Analysis

Plaintiff's claim against Hudson County fails because, quite simply, he offers no evidence of any policy or custom on the part of the county that led to his injury. *See Bergdoll*, 515 F. App'x at 171; *see also Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir.

2006) (citation omitted) ("[S]ummary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."). Thus, Plaintiff's claims against Hudson County, as well as his official-capacity claims against Steneck, are dismissed. *See Brown v. Makofka*, 644 F. App'x 139, 144 (3d Cir. 2016) (affirming dismissal of *Monell* claim on summary judgment where district court reasoned that "[n]owhere within the record does Plaintiff identify a specific custom, practice, or policy implemented by Defendants which caused a constitutional violation to Plaintiff"); *Ocasio v. Cty. of Hudson*, No. 14-0811, 2018 WL 707598, at *3 (D.N.J. Feb. 5, 2018) ("Consequently, all claims against [an individual defendant] in his official capacity are essentially claims against Defendant Hudson County, which has received proper notice and timely answered the Complaint. . . . [A]ll claims against [the individual defendant] in his official capacity are DISMISSED WITH PREJUDICE."); *Thomas v. City of Chester*, No. 15-3955, 2016 WL 1106900, at *2 (E.D. Pa. Mar. 21, 2016) ("A suit for damages against an individual municipal employee in his or her 'official capacity' is not cognizable unless the requirements of *Monell* are met.") (citation omitted).

### H. The Hudson County Correctional Department

"[P]risons and other correctional facilities are not "persons" within the meaning of § 1983." *Ogden v. Huntingdon Cty.*, No. 06-2299, 2007 WL 2343814, at *3 (M.D. Pa. Aug. 15, 2007) (citations omitted). Hudson County Correctional Department has not moved to dismiss claims against it. But if "the basis for dismissal is apparent from the face of the complaint, *sua sponte* dismissal may be appropriate as a means of prompt and efficient disposition of cases that lack a shred of a valid claim." *Id.* (internal quotation marks and citation omitted). Still,

"[b]efore *sua sponte* dismissal is appropriate, however, a court must give the plaintiff notice and an opportunity to be heard on the legal viability of his complaint." *Id.* (citations omitted).

The Court hereby provides notice to Plaintiff that it will dismiss the Hudson County Correctional Department absent any timely objection. Plaintiff may file any objection in accordance with the accompanying Order. *See also* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.").

## I. The Court dismisses Plaintiff's claim for intentional infliction of emotional distress

"To state a claim for intentional infliction of emotional distress, a plaintiff must show (1) that the defendant intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct, (2) that the conduct was 'extreme and outrageous,' (3) that the actions of the defendant were the cause of the plaintiff's distress, and (4) that the emotional distress sustained by the plaintiff was severe." *Sebastian v. Vorhees Twp.*, No. 08-6097, 2011 WL 540301, at *7 (D.N.J. Feb. 8, 2011) (citing *Cole v. Laughrey Funeral Home*, 869 A.2d 457, 464 (N.J. Super. Ct. App. Div. 2005)). "New Jersey courts have found that the emotional distress must meet an 'elevated threshold' which is only satisfied in 'extreme cases.'" *Id.* (quoting *Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292, 296 (N.J. Super. Ct. App. Div. 2001)).

Here, Plaintiff has come forward with no evidence "that his emotional distress met this elevated threshold"—and, absent such evidence, this claim must be dismissed. *See id.* In discussing an analogous Pennsylvania claim for intentional infliction of emotional distress, a sister federal court aptly stated that: "The Officers committed no constitutional violation in

arresting and prosecuting [the plaintiff]. Because their conduct was not unlawful—let alone extreme or outrageous—they are entitled to summary judgment on [the plaintiff's] intentional infliction of emotional distress claim." *Laphan v. Haines*, No. 14-4063, 2016 WL 627246, at *6 (E.D. Pa. Feb. 17, 2016) (citation omitted).  Such is the case here.

## IV.    Conclusion

The Court grants summary judgment in part and dismisses the following individual-capacity claims against Steneck: false arrest; false imprisonment; malicious prosecution; unlawful seizure of Plaintiff and his car; unlawful search of Plaintiff; violations of the First Amendment; violations of the Ninth Amendment; and intentional infliction of emotional distress. All claims against Hudson County are likewise dismissed, as are all official-capacity claims against Steneck.

But the Court declines to dismiss at this time Plaintiff's claim for unlawful search of his car.  Likewise, the Court declines to dismiss Plaintiff's excessive-force claims.  The Moving Defendants may file another summary judgment motion on these issues in accordance with the accompanying Order.  Further, the Court provides notice to Plaintiff that it will dismiss the Hudson County Correctional Department.  Plaintiff may file any objection in accordance with the accompanying Order.

Finally, the Court notes that the litigants should strive to conform any future motion practice with the Federal Rules of Civil Procedure and this District's Local Civil Rules.[6]

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

---

[6]    This is not only a message to pro se Plaintiff; the Moving Defendants' moving brief does not have a table of contents as required by this District's Local Civil Rules.  (*See* D.E. No. 43-9).